**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-01349-REB-STV

SILVIA SORIANO, and
MARICELA PEREZ,

    Plaintiffs,

v.

SEALY MATTRESS MANUFACTURING CO. LLC.,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

The matter before is **Defendant's Motion for Summary Judgment** [#48],[1] filed May 15, 2020.  I grant the motion.

### I.  JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586,

---

[1] "[#48]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).[2]

### III.  ANALYSIS

Plaintiffs, Silvia Soriano and Maricela Perez, formerly were employed by Sealy Mattress Manufacturing Co. ("Sealy") at its manufacturing facility in Denver, Colorado. Ms. Soriano and Ms. Perez both were members of the United Steel, Paper and Forestry Rubber Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO-CLC Local 12-477-5 (the "Union"), which was the sole bargaining agent for all employees, including plaintiffs, under the term of the Union's collective bargaining

---

[2] Because summary judgment would be appropriate even if I were to consider the allegedly infirm evidence appended to plaintiffs' response to the motion (with the specific exception identified in footnote 10, *infra*), I deny as moot their **Motion for Leave To File Response to Motion To Strike** ([#56], filed July 1, 2020)).

2

agreement ("CBA") with Sealy.  (*See* **Motion App.**, Exh. D art. 2.01 at 4.)

On December 11, 2018, Kim Stover, who worked beside Ms. Perez, approached Latricia Knapps in Sealy's Human Resources department to complain about harassment by Ms. Soriano and Ms. Perez.  At her deposition, Ms. Stover noted that while previously, Ms. Perez's "daily nitpicks" and complaining had made her uncomfortable, she had "made it work" and "just got through my days dealing with it." (**Motion App.**, Exh. F at 12.)  She reported to Ms. Knapps that Ms. Soriano and Ms. Perez frequently screamed and yelled about her within her hearing and that she had tried previously to just stay away from them.  (*See* **Motion App.**, Exh. G at 1.)

However, Ms. Stover reported that over the previous three weeks, Ms. Soriano's and Ms. Perez's behavior toward her had escalated.  Specifically, Ms. Soriano and Ms. Perez had begun to aggressively question Ms. Stover's hours and, in particular, whether she was being offered overtime in preference to more senior employees (particularly themselves).[3]  Ms. Stover claimed Ms. Soriano and Ms. Perez approached her daily, and sometimes multiple times a day, angrily asking her what time she was leaving or questioning why she was still at work.[4]  They would approach her as soon as she walked in the building, before she had even punched in for the day.  After their shifts had ended, they repeatedly checked whether Ms. Stover's car was still in the parking lot and then returned to the building wanting to know where Ms. Stover was and why she

---

[3] The CBA provides employees are to be offered overtime based on seniority. (*See* **Motion App.**, Exh. D art. 31.05 at 19.)

[4] Ms. Stover testified that employees did not know until early afternoon each day exactly what time their shift would end each day. (*See* **Motion App.**, Exh. F at 31.)

was still at work.  Ms. Soriano and Ms. Perez also questioned other employees daily about Ms. Stover's hours and monitored when she arrived and left work.  These conversations frequently were loud and proximate enough so that Ms. Stover could overhear them.  Ms. Stover stated she had become scared to walk to her car at the end of her shift and that the mental and emotional distress of the daily confrontations with Ms. Soriano and Ms. Perez were effecting her ability to continue in her job.  (**Motion App.,** Exh. G at 1; Exh. F at 12-13, 19-21.)

Ms. Knapps commenced an investigation the following day.  She first met with two managers, Lee Tarrant and Mark Reinhart, and two Union representatives, Juan Marquez and Angie Chavez, to inform them of Ms. Stover's allegations.  Collectively, they selected eight employees – in addition to Ms. Soriano and Ms. Perez – to interview.[5]  Ms. Knapps interviewed each of the employees over the course of the next two days.  Messrs. Tarrant, Reinhart, and Marquez and Ms. Chavez all were present during the interviews.  (**Motion App.**, Exh. A at 17.)

While Ms. Soriano and Ms. Perez claimed to have never asked anyone about their hours and insisted they were on friendly terms with Ms. Stover, the other employees interviewed painted a conflicting – and stark – picture of their workplace behavior.  The interviewees confirmed that Ms. Soriano and Ms. Perez frequently questioned other employees about Ms. Stover's hours, complained about her to other employees within her hearing, and tracked her whereabouts during the day.  They

---

[5]  Although plaintiffs alleged in their complaint that Ms. Knapps failed to interview any witnesses they suggested (**see Amended Complaint**  ¶ 14 at 4 [#22], filed September 19, 2019), they present no evidence substantiating that allegation.

uniformly described these incidents as angry and intimidating.  (**Motion App.** Exh. G at 2-3.)  Indeed, even while Ms. Stover was meeting with Ms. Knapps to make her complaint,

> Silvia and Maricela came back into the plant after their shift had ended.  Silvia yelled at this employee demanding to know where a specific employee was and what she was doing.  She refused to leave the building until she was able to see what this other employee was doing.  It became necessary for this employee to get the supervisor because they were making such a scene and refusing to leave. . . . This employee has often witnessed Silvia yelling and cursing as well as Maricela hounding the employee that made the initial complaint.

(**Motion App.**, Exh. G at 2 (interview with Employee #2).)

Beyond Ms. Soriano's and Ms. Perez's treatment of Ms. Stover, however, employees also reported the two created a more general atmosphere of anger and intimidation in the workplace:

> Silvia . . . often yells and curses on the floor and throws a fit, rants, and raves when she does not get her way.  She stands by the time clock and complains to employees about other employee's [sic] hours and badgers employees about their hours and the hours of others.  Silvia has yelled at the department lead on multiple occasions.  Silvia demands that the department lead do things the way that she wants and yells frequently making a scene on the production floor.  (**Motion App.**, Exh. G at 2 (interview with Employee #1).)

> This employee has experienced poor treatment, bullying, and taunting from Maricela and Silvia and brought a note in from a doctor at one point due to the emotional distress that they were causing.  (**Motion App.**, Exh. G at 3 (interview with Employee #6).)

> Maricela and Silvia complain a lot and are disrespectful as they want to boss everyone around including lead and supervisors to get their way.  (**Motion App.**, Exh. G at 3 (interview with Employee #5).)

> [T]he employee stated that Silvia is often angry and yells, throws, and slams objects in the department. . . . Silvia makes this employee feel very uncomfortable because she is always yelling at someone or fighting over something. The employee is frustrated and tries to ignore these things because she is afraid to say anything back. The employee states "it has to stop, I can't handle it. . . ." The employee explained not being comfortable at all and feeling stressed every day coming to work not knowing what Silvia is going to say or do that day and what the employee will have to put up with. (**Motion App.**, Exh. G at 2-3 (interview with Employee #8.)

In addition, four of the eight employees interviewed expressed fear of reprisal from Ms. Soriano and Ms. Perez if they spoke out; one told Ms. Knapps "I don't want them to have problems and do this to me. I'm just afraid to say anything and have more trouble." (**Motion App.**, Exh. G at 3 (interview with Employee #8).)

Based on these reports, Ms. Knapps and Messrs. Tarrant and Reinhart determined Ms. Soriano and Ms. Perez violated Sealy's Workplace Violence Policy, which establishes a "Zero Tolerance Standard" for "violent acts, threats (direct or implied), unlawful harassment, verbal or physical abuse, stalking, intimidation, and other disruptive behavior." (**Motion App.**, Exh. I at 1.) Both Ms. Soriano and Ms. Perez acknowledged receiving the policy at the time they were hired. (*See* **Motion App.**, Exh. J.) Violations of the policy were subject to immediate suspension, up to and including termination. (**Motion App..**, Exh. I at 2.) Based on the behaviors reported, the impact they were having on the work environment, and the level of fear expressed by many of the employees interviewed, Ms. Knapps and Messrs. Tarrant and Reinhart agreed termination was appropriate. (**Motion App.**, Exh. A at 77; Exh. H at 34.)

The Union subsequently filed a grievance on behalf of Ms. Soriano and Ms. Perez, claiming they had been terminated without "proper cause," as required by the CBA.[6]  (**See Motion App.**, Exh D art. 6.01 at 6; Exh. K.)  Sealy responded in writing, as required by the CBA, after which a meeting was held between Ms. Knapps on behalf of Sealy, local Union representatives, Mr. Marquez and Ms. Chavez, and two regional Union employees, Mike Adams and Cody Brown.[7]  At the meeting, in response to the Union representatives' questions as to why progressive discipline had not been used, Ms. Knapps explained Sealy's reasons for believing Ms. Soriano's and Ms. Perez's behavior was serious enough to warrant termination, including the severity and ongoing nature of the behavior and the fact that it was impacting not only Ms. Stover but other employees as well.  (**Motion App.**, Exh. A at 43-44.)  By letter dated February 8, 2019, Mr. Brown notified Ms. Soriano and Ms. Perez that, "after a thorough review of your case we have concluded 'that based on the merits of the case' we would not be successful in arbitration, therefore we will not be pursuing your grievance any further."  (**Motion App.**, Exh. L at 1, 2.)  This lawsuit followed.

By this suit, Ms. Soriano and Ms. Perez bring a claim against Sealy for alleged breach of the CBA under section 301 of the Labor Management Relations Act ("LMRA"),

---

[6] The CBA contemplates a three-step grievance procedure.  Step 1 of the process required an aggrieved employee to discuss her complaint with her immediate supervisor in an attempt to allow an informal resolution.  Because Ms. Soriano and Ms. Perez had been terminated, however, the process was initiated at Step 2 with the Union's filing of a formal written grievance.  (**See Motion App.**, Exh. D art. 27.02 at 16.)

[7] As contemplated by Step 3 of the grievance procedure.  (**See Motion App.**, Exh. D art. 27.02 at 16.)

29 U.S.C. § 185,[8] and a claim of race/national origin discrimination under Title VII, 42 U.S.C. § 2000e *et seq*. Because the record fails to show a genuine dispute of material fact sufficient to warrant presentation of either of these claims to a jury, however, Sealy is entitled to summary judgment.

When, as here, the terms of employment are governed by a CBA, it is generally the union's prerogative to enforce the terms of the agreement on behalf of its members pursuant to the procedures required by the contract. **See Republic Steel Corp. v. Maddox**, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). In that capacity, the union has a duty of fair representation, that is, an "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." **Vaca v. Sipes**, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

Because federal labor policy favors such private adjudication of labor disputes, courts ordinarily will not disturb a decision reached pursuant to the grievance procedures of a CBA. **See DelCostello v. International Brotherhood of Teamsters**, 462 U.S. 151, 163-64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); **Buck v. CF & I Steel, L.P.**, 913 F.Supp.2d 1045, 1051 (D. Colo. 2012), **aff'd**, 531 Fed. Appx. 936 (10th Cir. Sept. 5, 2013). Where that procedure ostensibly has been followed, it is not sufficient for an employee to prove that her underlying grievance was meritorious. **See General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.**, 372 U.S.

---

[8] An additional claim under section 301 for alleged breach of the overtime provisions of the CBA was dismissed with prejudice previously. (**See Order Adopting Recommendation of the United States Magistrate Judge** ¶ 2.a. at 2 [#47], filed May 12, 2020.)

517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963); **Buck**, 913 F.Supp.2d at 1051.  The employee also must establish that the union breached its duty of fair representation. **Webb v. ABF Freight Systems, Inc.**, 155 F.3d 1230, 1238 (10th Cir. 1998), **cert. denied**, 119 S.Ct. 1253 (1999).  Such a claim is referred to as a "hybrid" action under section 301 of the LMRA "because it combines two conceptually independent causes of action," a breach of the duty of fair representation by the union as well as a breach of the CBA by the employer.  **Id.** at 1239.[9]

A union breaches its duty of fair representation by acting in a "discriminatory, dishonest, arbitrary, or perfunctory fashion." **DelCostello v. International Brotherhood of Teamsters**, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).  Ms. Soriano and Ms. Perez maintain the Union breached its duty of fair representation by ignoring a meritorious grievance (i.e., their claim that they were not fired for "proper cause," as required by the CBA) and by failing to pursue arbitration once the grievance process was exhausted.  "Any substantive examination of a union's performance 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" **Lampkin v. Local No. 1093, UAW**, 154 F.3d 1136, 1144 (10th Cir. 1998) (quoting **Air Line Pilots Association v. O'Neill**, 499 U.S. 65, 78, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991)).  Given this broad discretion, a union's conduct is not arbitrary unless it is "so far outside a wide range of reasonableness as to be irrational." **O'Neill**,, 111 S.Ct. at 1130 (citation

---

[9] Thus, the elements of a hybrid section 301 claim are "(1) [s]ome conduct by the worker's union that breached the duty of fair representation; (2) [a] causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) [a] violation of the collective bargaining agreement by the company." **Webb**, 155 F.3d at 1239.

and internal quotation marks omitted).  **See also Young v. UAW–LETC**, 95 F.3d 992, 998 (10th Cir. 1996).  A union's processing of a grievance is considered perfunctory only where the union "acted without concern or solicitude, or gave a claim only cursory attention."  **Webb**, 155 F.3d at 1240 (citation and internal quotation marks omitted).

The evidence in this case fails to substantiate that the Union's processing and resolution of Ms. Soriano's and Ms. Perez's grievance was either arbitrary or perfunctory.  While both Ms. Soriano and Ms. Perez claim Mr. Brown and Mr. Adams both told them there was no reason to fire them, the timing of these alleged statements is unspecified.  It is clear, however, that Mr. Brown made the statement before the Union met with Ms. Knapps or heard the evidence Sealy considered in reaching its decision.  (**See Resp. App.**, Exh. 2 ¶ 6 at 2; Exh. 4 ¶ 6 at 2 (recounting Mr. Brown made this statement in the context of telling Mr. Marquez to file a grievance on plaintiffs behalf).)  Although Mr. Adams denies ever speaking to plaintiffs, assuming *arguendo* he did, nothing in the record suggests he made such statements *after* being apprised of the results of Sealy's investigation.  Such premature, uninformed statements cannot reasonably be construed as representing the Union's true estimation of the merit of Ms. Soriano's and Ms. Perez's grievance based on a fulsome review of the evidence.

Nevertheless, it is not enough for Ms. Soriano and Ms. Perez to show their grievance might have had some merit; they must establish "that it was so likely to succeed that the Union's refusal to pursue arbitration was irrational and, thus, arbitrary." **Buck**, 913 F.Supp.2d at 1054.  "An employee cannot compel the Union to pursue grievances having no legal merit." **Chernak v. Southwest Airlines Co.**, 778 F.2d 578,

581 (10th Cir. 1985).  Here, the evidence overwhelmingly shows plaintiffs' grievance was not meritorious.  **See Buck**, 913 F.Supp.2d at 1054 ("[I]t is appropriate to recognize potentially weak aspects of Plaintiff's grievance to assess the rationality of the Union's decision not to pursue arbitration.").

The evidence suggesting Ms. Soriano and Ms. Perez violated Sealy's workplace violence policy was strong; indeed, it was overwhelming.  All the witnesses interviewed confirmed plaintiffs not only were abusive to Ms. Stover, but created a general atmosphere of intimidation and stress in the workplace.  Although Ms. Soriano and Ms. Perez dispute Sealy's interpretation of their actions,[9] they fail to point to any admissible evidence suggesting Sealy did not reasonably credit the reports of the witnesses it interviewed, coerced or falsified witness testimony,[10] or otherwise skewed the investigation to reach a preordained conclusion adverse to them.  Violation of the Workplace Violence Policy clearly constituted "proper cause" for termination, as

---

[9] Ms. Soriano and Ms. Perez appear to be under the impression that because there was no physical violence in their interactions with or concerning Ms. Stover, their actions either did not violate the policy or were insufficiently serious to warrant termination.  Neither of those conclusions is correct.  The policy plainly applies to intimidation, harassment, verbal abuse, and "other disruptive behavior" and contemplates termination without progressive discipline in appropriate cases under a "Zero Tolerance" standard.  (**Motion App.**, Exh. I at 1.)  Moreover, nothing in the CBA requires progressive discipline.

[10] In her declaration, Ms. Soriano avers that one of the employees who was interviewed later told her "none of the statements recorded in her interview are correct."  (**Resp. App.**, Exh. 4 ¶ 8 at 2.)  This alleged statement is rank hearsay, however, and although plaintiffs claim they can produce it in admissible form for trial, their claim is highly dubious given the employee's refusal to sign a declaration to that effect in support of their response to the motion.  **See FED. R. CIV. P.** 56(c)(2) Adv. Comm. cmt. ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); **Brown v. Perez**, 835 F.3d 1223, 1232 (10th Cir. 2016) ("The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form.") (citation and internal quotation marks omitted).  Because the court "may consider only the evidence that would be available to the jury," **Argo v. Blue Cross & Blue Shield of Kansas, Inc.**, 452 F.3d 1193, 1199 (10th Cir. 2006), this statement is not sufficient to create a genuine dispute of material fact for trial, **see Johnson v. Weld County**, 594 F.3d 1202, 1210 (10th Cir. 2010).

required by the CBA.[11]  *See, e.g.*, **Mulvihill v. Top-Flite Golf Co.**, 335 F.3d 15, 23 (1st Cir. 2003); **Pegump v. Rockwell International Corp.**, 109 F.3d 442, 445 (8th Cir.1997); **Syncro Corp. v. NLRB**, 597 F.2d 922, 925 (5th Cir.1979); **Muhonen v. Cingular Wireless Employee Services, LLC**, 802 F.Supp.2d 1025, 1050 (D. Minn. 2011), *aff'd*, 456 Fed. Appx. 610 (8th Cir. March 3, 2012), *cert. denied*, 133 S.Ct 295 (2012); **Blow v. Philip Morris U.S.A.**, 2003 WL 23961850 at *3 (E.D. Va. Oct. 8, 2003), *aff'd*, 95 Fed. Appx. 35 (4th Cir. April 19, 2004); **Wessel v. Goodyear Tire & Rubber Co.**, 2002 WL 31728959 at *9-10 (N.D. Ohio Nov. 21, 2002); **Conn v. GATX Terminals Corp.**, 1993 WL 189931 at *4 (N.D. Ill. May 28, 1993), *aff'd*, 18 F.3d 417 (7th Cir. 1994).  The Union's decision not to pursue the grievance to arbitration therefore cannot be characterized as so irrational as to be arbitrary.

Plainly, Ms. Soriano and Ms. Perez do not share the Union's assessment of the merits of their grievance.  Their disagreement, however, is insufficient to create a genuine dispute of material fact on this issue.  The court will not "substitute for [its] own the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances."  **Young v. United Automobile Workers Labor Employment & Training Corp.**, 95 F.3d 992, 997 (10th Cir. 1996).  Because that judgment was not so irrational as to be arbitrary, the Union did not breach its duty of fair representation in

---

[11]  "Proper cause" was not defined in the CBA.  However, the CBA specifically gives Sealy "the right to formulate reasonable rules and regulations governing employees' activities within the plant" with which employees are required to comply.  (**Motion App.**, Exh. D art. 5.02 at 5.)

declining to pursue the matter to arbitration.[12]

Nor have plaintiffs shown the Union's processing of the grievance was perfunctory. To the contrary, the record shows "a prompt and diligent effort by the union [representatives] . . . to have [plaintiffs'] grievance heard and decided." ***Nelson v. Holmes Freight Lines, Inc.***, 37 F.3d 591, 594 n.4 (10th Cir. 1994). Relying on ***Peters v. Burlington Norther Railroad Co.***, 931 F.2d 534 (9th Cir. 1990), Ms. Soriano and Ms. Perez claim the Union "inexplicably ignore[d] a strong substantive argument that must be advanced in order for [them] to prevail on the merits," *id.* at 539, but fail to identify any such argument beyond their own, self-serving and disproven denials of improper behavior.[13] At worst, Ms. Soriano and Ms. Perez complain Union representatives failed to respond to them or explain why their grievance was not pursued further. Even if true,[14] such behavior constitutes nothing more than negligence, which does not constitute a breach of the duty of fair representation. ***United Steelworkers of***

---

[12] Ms. Soriano and Ms. Perez maintain the CBA requires the Union to pursue a grievance to arbitration. It does not. Instead, the contract provides for arbitration of disputes "which cannot be settled through the grievance procedure." (**Motion App.**, Exh. D. Art. 28.01 at 17.) Plainly, the Union felt plaintiffs' claims had been settled, just not in the way plaintiffs would have preferred. Moreover, union employees do not have an absolute right to have their grievances taken to arbitration. ***Vaca v. Sipes***, 87 S.Ct. at 917-18; ***Chernak***, 778 F.2d at 581.

[13] Ms. Soriano and Ms. Perez cite to ***Webb v. ABF Freight System, Inc.***, in which the court found a union's representation to be perfunctory. In ***Webb***, the evidence showed the union representative, *inter alia*, failed to present a claim of retaliation which the representative believed to be meritorious, failed to review evidence prior to the grievance hearing, and affirmatively misled the employee that his presence at the hearing was not needed and that no evidence or testimony would be allowed, then told the grievance panel he did not know why the employee was not present. ***Webb***, 155 F.3d at 1241 n.17. There is nothing comparable in the record of this case.

[14] This latter assertion is demonstrably untrue – Mr. Brown did inform plaintiffs that the Union was refusing to pursue the matter because it concluded "'based on the merits of the case' we would not be successful in arbitration." (**Motion App.**, Exh. L.) Moreover, the Tenth Circuit has rejected the proposition "that a union automatically breaches its duty of fair representation when it fails to provide a convincing and contemporaneous explanation to the employee for its failure to pursue his claim in the manner the employee wishes." ***Buck v. CF & I Steel, L.P.***, 531 Fed. Appx. 936, 938 (10th Cir. Sept. 5 2013).

13

*America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73, 110 S.Ct. 1904, 1911-12, 109 L.Ed.2d 362 (1990).  *See also Webb*, 155 F.3d at 1240 ("[M]ere negligent conduct[,] carelessness or honest mistakes" not sufficient to show breach of duty of fair representation); *Buck*, 913 F.Supp.2d at 1055 (union does not breach duty by "inconsequential neglect," such as failing to respond promptly to employee's inquiries).

Because Ms. Soriano and Ms. Perez fail to show a genuine dispute of material fact suggesting the Union breached its duty of fair representation, Sealy is entitled to summary judgment on their hybrid section 301 claim under the LMRA.

Their Title VII claim fares no better.  Ms. Soriano and Ms. Perez claim Sealy discriminated against them on the basis of their race and/or national origin by disciplining them more harshly because their accuser was white than it had in an allegedly similar situation in which the accuser was Hispanic. Specifically, they claim a Hispanic employee, Anna Garcia, harassed two other Hispanic employees but was not terminated.  In one incident, Maria Palomar complained that Ms. Garcia had pushed a cart into her.  (**Motion App.**, Exh. B at 166-167; Exh. C at 100.)  However, when Ms. Knapps queried Ms. Palomar about the incident, Ms. Palomar said she did not know whether the action was intentional, so Ms. Knapps simply instructed Ms. Garcia to be more careful in the future.  (*See* **Motion App.**, Exh. A at 53-54.)  In the other instance, Ms. Soriano and Ms. Perez claim Ms. Garcia twice slammed a door in the face of another employee identified only as "Myra."  Ms. Knapps had no record indicating Myra

14

or anyone else ever complained to human resources about that behavior, however.[15] (**Motion App.**, Exh. A at 53.)

Sealy maintains that because in both instances, the offending employee was also Hispanic, Ms. Soriano and Ms. Perez cannot show they were "treated less favorably than others not in the protected class." **See Khalik v. United Air Lines**, 671 F.3d 1188, 1192 (10th Cir. 2012). **See also Robinson v. Medical Answering Service**, 2019 WL 91756 at *3 (N.D.N.Y. Jan. 3, 2019) (finding in sex discrimination case that "difference between the genders of two alleged accusers does nothing to plausibly suggest an act of gender discrimination where the genders of the accuseds are the same"); **Jones v. Southwest Airlines**, 99 F.Supp.2d 1322, 1327-28 (D.N.M. 2000) (fact that purported comparator was of same race as plaintiff permitted "no inference of racially motivated disparate treatment"). I am not persuaded.

The elements of the *prima facie* case are not meant to be inflexible. **See Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 253 n.6, 101 S.Ct. 1089, 1094 n.6, 67 L.Ed.2d 207 (1981). Indeed, a more common formulation of this element of a *prima facie* case of disparate discipline simply requires proof "that the employer imposed discipline under circumstances giving rise to an inference of racial [or national origin] discrimination." **Jones v. Denver Post Corp.**, 203 F.3d 748, 753 (10th Cir. 2000). I am unwilling to find as a matter of law that a jury could never plausibly find infer discrimination where an employer treats complaints of harassment from white

---

[15] At her deposition, Ms. Perez alluded to a meeting in which seven employees purportedly went collectively to human resources to complain about Ms. Garcia's behavior. (**Def. Motion pp.**, Exh. C at 100.) It is unclear precisely what was discussed in that meeting, however. Thus, the above examples are the only two specific instances the court has for comparison.

employees more seriously than it did complaints by (or between) Hispanic (or other minority) employees. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (listing numerous ways in which aggrieved employee may prove this element of the *prima face* case).

Nevertheless, I need not resolve that question because it is clear in this case that Ms. Soriano and Ms. Perez have failed to present a genuine dispute of material fact demonstrating that Sealy's legitimate, nondiscriminatory reason for their terminations – their violation of the company's Workplace Violence Policy – was pretextual. *See Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).  Where, the employer has articulated such a legitimate, nondiscriminatory reason for its employment decision, "[a] plaintiff may demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (citation and internal quotation marks omitted).

Ms. Soriano and Ms. Perez utterly fail to address this issue in their response, but even if they had, the record is devoid of evidence from which a reasonable jury could conclude Sealy's determination that they violated the Workplace Violence Policy was a pretext for discrimination.  There is no admissible evidence suggesting the company did not honestly believe Ms. Soriano and Ms. Perez had committed the acts which their co-workers recounted to Ms. Knapps or that those action constituted a violation of the Workplace Violence Policy.  In the absence of such evidence, there is no issue of

pretext for a jury to resolve.

In assessing the question of pretext, the court's role is "not to act as a super personnel department that second guesses employers' business judgments," **Kendrick v. Penske Transportation Services**, 220 F.3d 1220, 1233 (10th Cir. 2000) (citation and internal quotation marks omitted), or "ask whether the employer's decision was wise, fair or correct," **Dewitt v. Southwest Bell Telephone Co.**, 845 F.3d 1299, 1307 (10th Cir. 2017) (citation and internal quotation marks omitted).  Where the evidence suggests no question as to whether the employer "honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs," no inference of discrimination arises.  **Id.** (citation, internal quotation marks, and internal brackets omitted).  **See also Hardy v. S.F. Phosphates L.C.**, 185 F.3d 1076, 1080 (10th Cir.1999) ("[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.") (citation and internal quotation marks omitted); **Aluru v. Anesthesia Consultants**, 176 F.Supp.3d 1116, 1128 (D. Colo. 2016) (court does not "assess[] whether an employer's evaluation of the relative merits of different employees is wise, fair, or even necessarily correct").

Of course, pretext may be shown where similarly situated employees are subjected to disparate discipline.  **Kendrick**, 220 F.3d at 1232); **Elmore v. Capstan, Inc.**, 58 F.3d 525, 530 (10th Cir. 1995).  Yet to be considered similarly situated, the employees must have "engaged in conduct of 'comparable seriousness.'" **EEOC v. PVNF, LLC**, 487 F.3d 790, 801 (10th Cir. 2007***)*** (quoting **McGowan v. City of Eufala**,

472 F.3d 736, 745 (10th Cir. 2006).  No reasonable jury could conclude that Ms. Garcia's action of running a cart into a co-worker on a single occasion, where the complainant conceded the incident could have been accidental, was comparable in intention, kind, or scope to the pervasive and unremitting of abuse and intimidation committed by Ms. Soriano and Ms. Perez which Ms. Knapps's investigation uncovered.[16]  Summary judgment therefore is warranted as to this claim as well.

## IV.  ORDERS

For these reasons, Sealy is entitled to summary judgment on all remaining claims in this lawsuit.  Its motion accordingly will be granted, and this action dismissed with prejudice.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment** [#48], filed May 15, 2020, is granted;

2. That plaintiffs' **Motion for Leave To File Response to Motion To Strike** [#56], filed July 1, 2020, is denied as moot;

3. That plaintiffs' remaining claims in this lawsuit are dismissed with prejudice;

4. That judgment with prejudice shall enter on behalf of defendant, Sealy Mattress Manufacturing Co., LLC, and against plaintiffs, Silvia Soriano and Maricela Perez, as to all claims for relief and causes of action remaining in this lawsuit;

5. That judgment with prejudice further shall enter in accordance with the **Order**

---

[16] There is no evidence that any complaints involving Ms. Garcia's treatment of "Myra" were ever brought to Sealy's attention.  Yet even if they had been, two incidents of slamming a door in someone's face, while evincing rude and unseemly workplace behavior, are in no wise comparable to the actions of which Sealy found Ms. Soriano and Ms. Perez credibly accused.

**Adopting Recommendation of United States Magistrate Judge** ¶3 at 2 [#47], filed May 12, 2020;

6.  That the combined Final Pretrial Conference and Trial Preparation Conference scheduled for September 24, 2020, at 10:00 a.m. is vacated;

7.  That the trial scheduled to commence on October 26, 2020, is vacated; and

8.  That this case is closed.

Dated July 29, 2020, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge